May it please the Court, again. In the multiple issues presented to the Court, I'd like to start off in anticipating possibly an inquiry involving the compact, so-called compact of free association with the Marshals, FSM, and the Republic of Palau, with the covenant which has been entered into by and between the United States and the people of the Northern Marianas. This is sort of out of an abundance of caution. I'd like to distinguish between the two documents since there has been an ample amount of law analyzing the covenant and its applicability to the Commonwealth, and whether actions invoking the covenant within the Commonwealth substantiate a federal jurisdiction issue before the District Court or, of course, this Court. The initial difference between the compact and the CNMI covenant is that the compact is with foreign countries, namely the Republic of the Marshals, FSM, and the Republic of Palau. The compact is not only a treaty between these various countries, the applicable one, of course, between FSM and the United States, it is also a statute of the United States. The covenant is a federal law at best. Next, and possibly more important, the covenant cases primarily concern issues involving the Commonwealth's Constitution, Article 12, which involves land holding and the restrictions on land holding within the Commonwealth. Those cases, having come up here many times, this Court has determined that simply because one invokes the covenant, that doesn't mean you're going to get jurisdiction in a federal court. And certainly the last several cases that have come up under the covenant have had that happen. You are predicating jurisdiction in the federal court under the compact? Yes, correct. Which is comparable to a statute? That's correct, Your Honor. And so in order for a statute to give a jurisdiction, the person predicating jurisdiction on the statute has to show that the statute intended a private right of action under the statute. So would you explain to me where in the compact there is an expressed intent for a private right of action? If you are talking about an express statement within the compact or public law 99239, there is no express statement that I can find. What about an implied private right of action? That is where we are at the present time, Your Honor. With respect to an implied right of action, the purpose of the particular provisions of the compact that we are relying upon relate to the investment development fund, which was created by public law 99239 and codified at 48 U.S.C. section 1900. Now the idea for investment development fund was created by this federal law. The federal law also created a board of advisors of five people, three of whom would be FSM citizens and two would be appointed by the United States government. Now this situation sets up a fund or the entity that some $20 million U.S. grant funds was poured into. Now as a result of the subsidiary agreement between the United States of America and the Federated States of Micronesia, the particular details which fleshed out the purpose which was to promote the relations between the FSM and the United States and its citizens and to create a basis for a private economy within the FSM, which barely existed then and barely exists now. Now with respect to that subsidiary agreement, it set forth particular requirements soliciting, essentially soliciting American investment in the Federated States of Micronesia. Op, as a corporation set up by the individual plaintiffs here, took advantage of that situation, borrowed money, the grant money from the United States of America, took that money and used it. That is the basis of the implied right of action as far as the factual background. Can I just make sure I understand this? The language you just quoted about furthering these economic ties between Micronesia, FSM and the United States, that comes from the agreement rather than the statute? We submit, Your Honor, that that is a bilateral agreement and under the statute, basic statute, that is considered part of 99-239. Well, normally a bilateral agreement would be characterized as a treaty and then we would shift into international law to determine whether it's a self-executing treaty to determine if there's a private cause of action. So how you or we, how it's characterized is probably significant here. You're saying you think it somehow appends itself to the statute and not stands out there as a bilateral treaty. It was created pursuant to the statute. The statute says that the IDF is in existence. Okay, it sets up the governing body essentially in very outlined form. However, as far as the details, that is the effectuation of this agreement, that was set forth in the subsidiary agreement. Now, if the only basis for that subsidiary agreement is the statute, so to that extent, we submit that it is part of the statutory scheme. I think it's in 48 U.S.C. section 1901, subsidiary agreements are deemed to be bilateral agreements between the United States and in this case, FSM. So if it is a bilateral agreement, if the court says, well, that is a treaty, well, it still happens to be the law of the United States and I submit provides a basis for jurisdiction to exist in the district court. Do you want to save time? You have about 15 and a half minutes. Yes, I think I'd better. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, this is Michael Schwab on behalf of the United States. I wanted to start off, Your Honor, very quickly and dive right into this investment development fund agreement, the agreement which we do see as a bilateral agreement more akin to a treaty. However, I don't think that is the significant point that was important to us in saying that there's a failure to state a cause of action here. If you look at that investment development fund agreement, in section 4 of that agreement, it specifically says that the fund is to be owned exclusively by the FSM. It then goes on to say what the intention is of this fund agreement. The intention is to further close economic relations between the United States and the FSM. Now, it's important to note the gravamen of the plaintiff's argument here is that the state of Pohnpei somehow violated their rights. Well, the state of Pohnpei, as we know in America, there's tension between states and the federal system. Well, the federal system is what we had our agreement with, and the federal system here has done nothing wrong. So the United States would have no basis for taking any action against the FSM. Or vice versa. Or vice versa. Does it – I mean, the question here is whether there's a private right of action, right? Exactly. If there is, the court below was wrong, send it back. If there's not, affirm. Well, I think Your Honor has to look to see if there's no cause of action here. They're stating that there's some claim against the United States because of a breach. But the breach isn't by the FSM, and the agreement is between the FSM and the United States. But first, you have to determine whether the court had jurisdiction. So that's the issue in looking to whether there's a private right of action statute. Because if the court had no jurisdiction, it doesn't matter whether they stated a cause of action or not. If the court didn't even have jurisdiction over whatever they pled. Very good point, Your Honor. And the court had no jurisdiction here. There was no private cause of action. This is an agreement between the FSM and the United States, not between private parties that, in this case, borrowed money from the bank that originally came from the fund that the United States gave to the FSM, exactly for this purpose, to try to cultivate some sort of private investment, which the FSM, in this case, according to the excerpts of record, did. They created this fund. The plaintiffs believe they were wronged under this fund. The FSM courts gave them satisfaction, gave them money, and now the bank is collecting. It's the way the mechanism was supposed to work. In the alternative, jurisdiction was pled under the Foreign Sovereign Immunities Act. I'm sorry, Your Honor? In the alternative, jurisdiction was pled under the Foreign Sovereign Immunities Act. Yes, and I don't believe it would apply here. Why not? Well, Your Honor, the act as I understand it just wouldn't have an application where we're talking about an agreement under this development fund between the FSM and the United States, where the FSM has done exactly what the United States required of it. So how would that in any way create jurisdiction? Does that relate to the U.S. claim, or are you just really on the first issue of whether there's a private right of action? Actually, I think the two are intertwined. You're right in that there is no private cause of action, so we wouldn't even need to get to the substance of what happened. But, in fact, the substance of what happened points to us, to us, emphasizes just how there is no cause of action here, because this was an agreement between the FSM and the United States of America. The United States of America was very clear in this development fund, saying they didn't want to be personally liable. They didn't want to be liable to the people that got loans under this agreement, and that's stated in Paragraph 5. Distributions from the fund shall in no way obligate or create liability in the government of the United States. Absolutely clear. The intent is there. Are you sharing your time? No, Your Honor. Yes, Your Honor, I am. Okay. I just wanted to check and see who else. I see three names here, and I see three people. I will then concede to my next colleague. Thank you. Thank you. May it please the Court, Gregory Cobell, on behalf of the Appellee Federated States of Micronesia Development Bank. I'd like to address two of the issues that Your Honors have brought up. The first one is the FSIA, Foreign Sovereign Immunities Act, jurisdiction here. There is no jurisdiction under the Foreign Sovereign Immunities Act, and the parties agree that if there is no Foreign Sovereign Immunities Act jurisdiction, then there is no jurisdiction here for the federal courts. Basically, there were two exceptions found in the Immunities Act that are cited by the plaintiffs. The first one is the commercial activity exception, and the second one is the tortious activity exception. The tortious activity exception is basically to eliminate the immunities that sovereigns have in cases of traffic accidents and that sort of thing, tortious activities that actually happen inside of the United States. There's no allegations here that any activity by the State of Ponte Bay or the bank happened inside the United States. The commercial activity exception applies when the foreign sovereign engages in commercial activities, and that commercial activity injures the plaintiff, and the effect is felt in the United States. Here, again, this is an FSM business that was allegedly destroyed by the State of Ponte Bay. The effect was felt only in the Federated States of Micronesia, not in the United States. The plaintiffs say, well, there's an effect in that. Because you destroyed our pepper business, we weren't able to export peppercorns to a few buyers in the United States. But again, that effect was felt by the buyers, not by the plaintiffs who exported the peppercorns to the U.S. None of the buyers are here in front of this court saying, well, we didn't have access to the plaintiff's peppercorns, so we were injured in the United States. So there really was no direct effect. So there is no jurisdiction under the Immunities Act, and therefore the federal courts don't have jurisdiction over this case. The other issue that we've been discussing this morning is the implied private right of action, and I think the Alexander v. Sandoval case, the U.S. Supreme Court case, addresses this issue very nicely. The Supreme Court said in that case that the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist, and a court may not create one no matter how desirable it may be as a policy matter or how compatible with the statute. And basically, again, the gravamen of the plaintiff's claim here is found in their brief at page 14, where they say clearly the purpose of the agreement, the implementing agreement, and the fund it established was to encourage private investment in the FSM by the U.S. investors, whereby conduct of one of the participants in the fund, in this case the state of Pohnpei, the essential purposes of the fund are thwarted. There must be a sanction and relief afforded. So what the plaintiffs are saying here is if this is a statute, Congress couldn't have possibly anticipated that if there were a breach of this statute that there would not be a remedy afforded. However, if you look at the agreement, which is what the plaintiffs are citing, there is nothing in there that indicates any intent, congressional or otherwise, to give a remedy to the plaintiffs for an implied private right of action. Additionally, I'd just like to let the Court know that we included in our supplemental excerpts of record the order from the FSM Superior Court, I'm sorry, the Supreme Court Trial Division, which basically goes through the history of the cases as they were litigated in the FSM. They involve the same parties that are here in front of the Court today, the same issues, and they've been litigated to conclusion and, in a few cases, past conclusion in the FSM. The reason we included this was because if there was a thought that we might allow the plaintiff to amend their complaint, we just wanted to show that it really would be a futile act. The district court here chose not to get into the res judicata issue, but if there were an amendment to the complaint, it's clear from the order of the FSM Court that these issues have been litigated to conclusion in the FSM, and there really is a res judicata problem here. There's a minute that I'd like to turn over to my colleague. Thank you, Your Honor. Thank you. May it please the Court. Matthew Gregory on behalf of the State of Pohnpei. Since I only have a minute, I'll jump to the quick. We've been discussing the compact statute. The appellant has argued that it is a statute. I think it is clear that it is a treaty and that the court test for an implied right of action is not the appropriate test. We're looking at the test for a treaty under the Mann case. So we have at the very top of the compact, we have a joint. It's referred to as a joint resolution. In that, the public law reference is only to show ratification. Joint resolutions are very common with treaties. This is the annexation of Texas, the annexation of Hawaii, a piece with Germany in World War I. These are all examples of that. At the very bottom of the compact. It appears that the Supreme Court recently, in the case of Alabama versus North Carolina, equated an interstate compact to a federal statute. So I'm not sure it's clear cut that the compact is akin to a treaty. I don't think that it matters to the outcome of this case. I think the court test has not been met. But I think the fact that it's just, it is referred to as a joint resolution. At the very end, it's negotiated by the state of Pohnpei. It's not here. It's not an internal U.S. state.  We're talking about a foreign country. Sovereign. Right. Negotiated, and I guess the ambassador to the United States of the United States had executed this document at the very bottom of the compact, you can see. So it's clearly a negotiation between two sovereign governments, not an interstate matter within the United States. But as Judge Robinson said, maybe it doesn't matter how you, whether you go under court or some other. I think some of the authority that has been discussed as to whether you look at a treaty as having some state law elements is when the treaty itself calls for implementation statutes. I think it's a slightly different issue where if it was clear from the compact that there was some additional public law that had to be executed. It's kind of a hybrid because it's kind of predicated on the statute as opposed to standing alone. I think the pattern, though, Your Honor, is that the public laws are a method by which the. . . The treaty has to be ratified, or otherwise you have a, like a lot of our, we have a lot of treaties out there that aren't ratified that have been signed. That's correct. But that then don't become the law that land under Protecting Havana or some other Supreme Court case, is that right? Yes, there is some limited authority by the President to sign international agreements. Again, this is, I'm not going to second guess the intent of the State Department when they looked at this as a joint resolution and as a treaty that would be negotiated between the State Department and the government of the FSM and the Republic of the Marshals. So I think the difference, and I think I'm not familiar with the Supreme Court case that Your Honor referred to, but my understanding is the difference is there are some treaties that require some public law to effectuate the intent of the treaty. And in this case, we're only talking about aid from one government to another. That is the subject of this lawsuit. I think if we look at the public policy of every time we're talking about inter-government aid that we imply some kind of private right of action, I think that the State Department may have something to say about that. They probably would strongly disagree on public policy grounds with a foreign government being hauled into a federal court without some explicit discussion in the treaty itself. Like we talk about the Warsaw Convention or some of the other treaties that really intend the court to have jurisdiction and imply lawsuits should take place in the United States. I think we really need that. Thank you. Mr. Krishni. Thank you. The purpose of the IDF under 48 U.S.C. section 1911B is to attract U.S. investment into the FSM. This may be an agreement between the FSM and the United States of America. However, the purpose of this statute, the purpose of the subsidiary agreements is to bring private individuals, real human beings from America to invest their money in the FSM. This is shown, the failures of this are shown throughout the excerpts of record where I provide the court with documentation from the Interior Department showing how there's been negative growth, negative growth in FSM. The Joint Economic Management Committee which was created pursuant to the subsequent public law, 108118, sets up the Joint Economic Management Committee. That sets up a system whereby financial controls in FSM are very closely controlled by the United States government through GEMCO. Everything has to be approved, everything has to be approved because they've wasted their money. And part of the waste of that money is in this case where they have simply failed to protect the investors, the Arthurs, the Henrys, Hopp, who are complying with the United States public law, the subsidiary agreement and the FSM legislation which set this up within FSM. Consequently, there should be a private right of action because the United States government is doing nothing. They have the power to do it. They have the power in the original compact to do this. For instance, under Section 1902B2... Have you complained to the State Department? I'm sorry? Have you complained to the State Department? Yes, we've complained to the State Department, not me personally but my clients. My clients have. We've written letters to the United States Congress. They've had letters back from the United States Congress, Senator McCain. There were a couple of representatives that wrote back to the FSM asking them, why are you doing this? Nothing has happened. Yet the United States government has the power and that's why under the current law we are asking as one of our causes of action for the United States government to debar the State of Pompeii because the State of Pompeii... Maybe Mr. Schwab will, since he represents Secretary Clinton, he'll hear your plea and at least take back the information. Hopefully, Your Honor. I think your time has expired. That is correct, Your Honor. Thank you very much. Thank you. Case just argued, AHPW v. Pohnpei is now submitted. Thank you for your arguments. Very interesting case as most of these often are because of the nature of jurisdiction out there in FSM.
judges: Hawkins, McKeown, Rawlinson